**In the**
**UNITED STATES DISTRICT COURT**
**for the SOUTHERN DISTRICT OF INDIANA,**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **KEVIN D. LONG**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| *vs.* | ) **CAUSE NO.  1:08-cv-890-SEB-TAB** |
| | ) |
| **LEIGHTON TURNER, SCOTT MARTIN,** | ) |
| **MICHAEL HALL, FRANKLIN** | ) |
| **COMMUNITY SCHOOL** | ) |
| **CORPORATION,** and **FRANKLIN** | ) |
| **COMMUNITY HIGH SCHOOL**, | ) |
| | ) |
| Defendants. | ) |

**E N T R Y**

**Defendants' Motion for Summary Judgment (doc. 31)**

Administrators at Plaintiff Kevin Long's high school suspected that he had smoked

marijuana with other students while inside a car on the school's parking lot one day before

classes started.  When Mr. Long, a 17-year-old senior, returned to school a few days later, he

agreed to have a urinalysis administered to him.  Two administrators who were supervising the

collection of the sample instructed Mr. Long to face them so they could have direct observation

of his genitals while he provided the sample.  After a couple of failed efforts and much waiting,

Mr. Long successfully provided a sample at the end of the day.  The results were inconclusive

due to indications of dilution.  Claiming that his Fourth and Fourteenth Amendment rights were

violated, Mr. Long brought this § 1983 suit against the supervising administrators, the high

school, and the school district.  He does not assert that the initiation of the urinalysis test was

unconstitutional because he admits that he agreed to it; rather, he claims that the manner in

1

which the test was administered violated his rights.  Defendants now move for summary judgment on all claims.

There is broad agreement on the relevant facts; any factual disputes will be noted.  On the morning of November 21, 2007, the Wednesday before the Thanksgiving break, Mr. Long and three other students — two males and one female — were sitting in a car in the parking lot of Franklin Community High School in Franklin, Indiana, before school started. Based on certain indications, the school suspected that the students were smoking marijuana in the car.  When confronted later in the day by Defendant Leighton Turner, Assistant Principal, the two other males admitted smoking marijuana in the car and said that Mr. Long was also smoking; the female denied participating but also implicated Mr. Long as smoking marijuana.  A consensual search of the car turned up marijuana; in fact, one of the male students pointed it out during the search.  Assistant Principal Turner was unable to talk to Mr. Long that day because he had already left school property as part of an internship program.  The male student in whose car the smoking had occurred and the marijuana was found during the search was expelled and arrested by the police.  The other male student was expelled.  Administrators determined that the female student had not participated in smoking marijuana, so she was not punished.

On November 26, 2007, the Monday after the Thanksgiving break, Mr. Long returned to school and was quickly summoned to Assistant Principal Turner's office.  Mr. Turner informed Mr. Long of the results of his investigation and that the other three students had implicated him in the marijuana smoking.  He told Mr. Long that he therefore had reason to believe that Mr. Long had smoked marijuana while on school property and that, according to the school's drug

policy, he could face expulsion because of it.  At this point, the stories differ slightly.  Mr. Long alleges that Assistant Principal Turner told him that, due to the fact that he admitted to being in the car, he could be expelled from school and that the only way to prove that he wasn't smoking marijuana and avoid expulsion would be to give a urine sample.  Mr. Long alleges that Mr. Turner gave him no other options and, because he did not want to be expelled, he agreed to the urinalysis.  According to Mr. Turner, it was Mr. Long who proposed the urinalysis in order to prove his innocence.  The difference is immaterial, however, because Mr. Long concedes that he voluntarily agreed to the urinalysis; he does not challenge the administration of the test by claiming that his consent was obtained through coercion or undue influence or was otherwise invalid.  He challenges only the manner in which the urinalysis sample was collected.

Assistant Principal Turner asked Defendant Scott Martin, another assistant principal, to witness the sample collection process with him.  They took Mr. Long to a single-user bathroom in the administrative offices consisting of one toilet, without stall, and one sink.  Messrs. Turner and Martin stood next to the door, about four or five feet from Mr. Long, who stood next to the toilet.  Mr. Long faced away from the two supervisors in order to fill the sample cup; this is where the stories differ materially.  Mr. Long alleges that Mr. Turner and Mr. Martin instructed him to turn around and face them so that they could directly observe him as he urinated into the cup.  He alleges that, during subsequent attempts to collect a sample from him, he was instructed to and did face directly toward the two witnesses.

Because pertinent portions of Mr. Turner's deposition were not submitted on the present motion, it is difficult to achieve clarity with respect to Defendants' allegations.  However, based

on the excerpts submitted, it appears that Mr. Turner at least instructed Mr. Long to turn, that is, he might have said "face me," but he contends that it was not his intention for Mr. Long to face him.  Turner Deposition (doc. 33-2) at 79.  Mr. Turner testified that he wanted to see the specimen cup itself, "[a]nd see the cup as it fell," and he had no desire to see Mr. Long's genitals.  *Id*. at 79-80.  He apparently testified that he told Mr. Long to "[t]urn around so I can see the cup."  *Id.* at 80.  Mr. Turner alleges that he did not instruct the two administrators who witnessed a later attempt to obtain a sample from Mr. Long to make sure that he faced where they could see him giving the sample.  *Id*. at 50.  However, when asked by interrogatory to describe in detail the procedure by which Mr. Long submitted to a urinalyses, Mr. Turner responded:   "Mr. Long tried to turn away from Mr. Martin and me.  I told him he had to face us so we could see him provide the sample."  Answers to Plaintiff's First Interrogatories (doc. 37-4), Interrogatory no. 3.C.  Mr. Turner alleged that he was concerned about supervising the collection of Mr. Long's urine because he was aware that at least two of the students involved had communicated over the long weekend, that students in the same kind of trouble generally communicate extensively, and that Mr. Long, therefore, could have been tipped off about what was awaiting him on Monday.  Thus, he was concerned that Mr. Long might be prepared to submit a diluted specimen or altered test.  *Id.* at 84-85.

Mr. Long was initially unable to give a sample.  He claims that he was uncomfortable with the two supervisors directly observing him in close quarters.  He alleges that he asked the administrators to call his mother and they refused.  Mr. Turner contends that Mr. Long never asked to communicate with his mother during that day.  Mr. Long concedes that he never told the administrators that he refused to proceed with the test unless he spoke with his mother or

4

because of the manner in which it was being administered.  He has not alleged or claimed that he withdrew his consent to the test, or that his initial voluntary participation was later converted into a coerced or required participation.

At that point, Mr. Long and the supervisors left the bathroom, Mr. Long was given some water to drink and was told that he could try to produce a sample later.  After one or two hours, and about 32 ounces of water, Mr. Long felt the need to urinate.  Messrs. Turner and Martin again accompanied him to the same bathroom to supervise the process.  Mr. Long alleges that he again turned away from the two administrators but was told again that he had to turn and face them.  Mr. Long again had trouble urinating and alleges that his request to speak with his parents was refused.  He again left the restroom and sat in the administrative offices drinking water. There were either one or two more attempts to collect a sample from Mr. Long, with Mr. Long drinking water in between each attempt.  Mr. Long alleges that, after the lunch hour, Defendant Michael Hall, a guidance counselor, and Mr. Martin witnessed his next unsuccessful attempt to urinate.  Eventually, about twenty to thirty minutes after the end of the school day, Mr. Long alleges that he was able to provide a sample after turning slightly away from Messrs. Turner and Hall, the two witnesses at that time, in order to get a little more privacy.  Defendants contend that Mr. Long successfully produced a sample on the third attempt in front of Messrs. Hall and Martin after turning a bit to the side.

The results came back negative from the laboratory but with a very low creatinine number indicating possible dilution and an invalid result.  Assistant Principal Turner decided not to suspend or expel Mr. Long based on this incident but a plan was drawn up with his parents

according to which Mr. Long was placed on probation which included random drug testing to be done in the nurse's office restroom without witnesses.  In May 2008, Mr. Long was expelled from school for reasons unrelated to this lawsuit.

Summary judgment should be rendered, in whole or in part, if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(2).

### Franklin Community High School

Mr. Long agrees with Defendants that Franklin Community High School is not a suable entity and thus warrants dismissal from this case.

### Fourth and Fourteenth Amendment violation

Mr. Long alleges that his Fourth and Fourteenth Amendment rights were violated by the manner in which Defendants administered the urinalysis test.  Specifically, he claims that the individual defendants' direct observations of him while urinating was unreasonable.

The Fourth Amendment, which is applicable to the State through incorporation in the Fourteenth Amendment, prohibits unreasonable searches and seizures.  The determination of reasonableness "depends on the context within which a search takes place," *New Jersey v. T. L. O.*, 469 U.S. 325, 337 (1985), and requires a balancing of the need to search against the invasion that is entailed, *Id.*  This standard of overall reasonableness accommodates the special context of the school setting:  "while children do not 'shed their constitutional rights . . . at the schoolhouse

gate,' the nature of those rights is what is appropriate for children in school." *Veronica School District 47J v. Acton*, 515 U.S. 646, 655-56 (1995) (citation omitted).

> [T]he legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the . . . action was justified at its inception;" second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place." Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measure adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

*T. L. O.*, 469 U.S. at 341-42 (citations and footnote omitted). Three factors are analyzed when evaluating the reasonableness of a school's search of a student: first is the nature of the privacy interest upon which the search intrudes; second is the character of the intrusion into the student's privacy; and third is the nature and immediacy of the governmental interest and the efficacy of its means for meeting it. *Veronica School Dist.*, 515 U.S. at 654-64.

It is well-settled that a school's collection of urinalysis samples implicates Fourth Amendment protections. *Bd. of Education of Independent School Dist. No. 92 of Pottawatomie Co. v. Earls*, 536 U.S. 822, 828 (2002). Under the first factor, the nature of the privacy interest intruded upon, it is also well-settled that, in the school context, students have a lesser expectation of privacy than do members of the population generally. *Veronica School Dist.* 515 U.S. at 657. School-administered urinalysis creates particular concern under the second factor, the character of the intrusion, because "[u]rination is 'an excretory function traditionally shielded by great privacy.'" *Earls*, 536 U.S. at 832 (citation omitted). "But the 'degree of intrusion' on one's

privacy caused by collecting a urine sample 'depends upon the manner in which production of the urine sample is monitored.'" *Id.* (citation omitted). Under the third factor, the nature and immediacy of the government's interest and the efficacy of its means for meeting it, the Supreme Court has often recognized the dangers posed by drug abuse in schools and schools' legitimate interests in combating it by administering urinalysis in particular situations, such as a condition for participation in athletics, *Veronica School Dist.*, and non-athletic extracurricular activities, *Earls*, where particularized individual suspicion has not been required.

Defendants argue that the presence of the two administrators in the bathroom with Mr. Long as he gave a urine sample did not violate the Fourth Amendment as a matter of law. They concede that the intrusion into his privacy was significant because he gave his sample "in the presence" of school administrators. They argue, however, that the manner of collecting his sample was reasonable because, as he admitted, he voluntarily offered to take the drug test; he admitted that he was familiar with the process, having talked to several other students who had given samples; and the school had a reasonable suspicion of drug use by Mr. Long. They contend that the magnitude of the intrusion is outweighed by the fact that Mr. Long consented to it. They argue that this case is identical to *Rinker v. Sipler*, 264 F.Supp.2d 181 (M.D. Penn. 2003). In that case, a male junior-high-school student, who was suspected of being under the influence of marijuana, was told by a male principal to pull out his pants pockets while in the principal's office. A male security officer placed his hands in the student's pockets to check for contents. Then the student was instructed to lower his pants as the security officer ran his hands around the inside of the waist band of his boxer shorts to check for drugs. The court noted that the student was not nude at any time, no women were present, his genitals were not exposed or

8

examined, and he was not touched inappropriately.  Not finding any drugs, the student was asked, and agreed, to give a sample for urinalysis.  He was taken to a private bathroom and the security guard stood behind him.  When the student was unable to produce a sample, the guard ran the water in the sink, had the student drink some water, and run his wrists under the water. The guard also splashed water on the student's neck, to no avail.  Eventually, the guard took the student to a larger bathroom used by students, and the student was able to give a sample with the guard standing behind him.  The court found that the principal's request that the student drop his pants and the guard running his hand under the waist band of his underwear were reasonable in light of the particularized suspicion that the student was under the influence and might have marijuana on his person.  While understandably discomforted during the process, the student's privacy interests were not unreasonably violated.  Similarly, the court found that the manner in which the urinalysis was administered was reasonable and "did not intrude on the essential level of privacy found in a public bathroom."  *Id.* at 191.

 School administration of urinalysis testing and the manner of monitoring sample collection have been approved where students were alone in a stall with a monitor outside listening and where the student was standing at a urinal or toilet with monitors behind the student.  But, in no case cited to us by Defendants or that we uncovered as a result of our own research has a court specifically approved a process where a school monitor conducted direct observation of a male student's genitals as he gave or attempted to give a sample.

This case is not like *Rinker,* and Defendants elide the fundamental, material disputes of facts.  The major factual dispute here is whether Mr. Long was required to face the supervising

witnesses as they directly observed his genitals as he attempted to provide a urine sample.  Mr. Long alleges that he was required to do so and Mr. Turner's interrogatory response indicates that in fact he did tell Mr. Long to face him.  Assistant Principal Turner alleges that he was only interested in observing the specimen cup and told Mr. Long only to keep the cup in view.[1] Further, Defendants' argument that the magnitude of any intrusion into Mr. Long's privacy is outweighed by his consent to the process seems to us to be somewhat disingenuous.  They claim that he consented, fully knowing what was involved because he had talked with several students who had previously given such samples.  However the portions of Mr. Long's deposition to which they cite do not support that claim.  Mr. Long stated that he had heard of other students who had been tested for sports but he did not state that he was aware of the manner by which Defendants witnessed his urine collection.  In addition, *Rinker,* itself, teaches that Mr. Long's consent to the initiation or fact of the urinalysis does not excuse the manner in which it was administered.

As noted above, whether the manner of Defendants' supervision of Mr. Long's urinalysis was permissible depends on whether it was reasonably related to their objectives and not excessively intrusive in light of Mr. Long's age and sex.  Given the Court's repeated recognition of the "great privacy" interest that protects the performance of excretory functions such as urination, the balancing required to determine of whether Defendants violated Mr. Long's Fourth Amendment rights turns precisely on the disputed fact of whether Defendants were directly

---

[1] How this would have been accomplished without viewing Mr. Long's genitals and, if so, how it would have guaranteed a valid, unadulterated, or untampered sample have not been explained to us based on the evidence presented in connection with this motion.

observing Mr. Long as he was urinating in order to produce a sample for the drug test.

Defendants did not cite to any authority holding that administrators' direct observation of a student's urination in order to provide a urinalysis sample does not violate the Fourth Amendment.  Similarly, Plaintiff did not provide any citations to the contrary.  Although the Court's research revealed very few cases upholding direct observation (or "direct supervision") of urinalysis sample collections, none applied in a school context.

Given the material disputes of fact in this case and the lack of controlling or persuasive caselaw, summary judgment cannot be entered here relating to the possible violation of Mr. Long's Fourth and Fourteenth Amendment rights.

## Qualified Immunity

Defendants, alternatively, request that the individual defendants be afforded qualified immunity based on the fact that the evidence establishes that they acted in good faith and not contrary to clearly established law.  Mr. Long does not dispute Defendants' argument that it is his burden to prove a clearly established right.  *Hannon v. Turnage*, 892 F.2d 653 (7th Cir. 1990).

In response to Defendants' argument, Mr. Long contends that, because the school district did not have a policy in place to aid teachers and administrators in the manner of administering urinalysis tests, the Court should hold that the manner in which Mr. Long's urinalysis was conducted was *per se* unreasonable.  However, qualified immunity, if available, would protect only the individual defendants, not the corporate entities.

11

Regarding the claims against the individual Defendants, Mr. Long argues only that the constitutional standards were clearly established and that Defendants should have limited themselves to actions that have already been approved in the caselaw.  However, Mr. Long is obligated to prove not that the standards in general are clearly established, but that the right in this particular factual context is clearly established, *Polenz v. Parrott*, 883 F.2d 551, 554 (7th Cir. 1989).  There is no rule that provides that qualified immunity must be denied if the particular factual context is novel.  Mr. Long has cited no authority clearly holding that direct observation of a student's production of a urine sample is unreasonable in the circumstances of this case.

Therefore, the individual Defendants are entitled to qualified immunity and are entitled to be dismissed.

### Franklin Community School Corporation

Defendants argue that Franklin Community School Corporation is entitled to Eleventh Amendment immunity because, due to recent comprehensive changes in Indiana's school law, local school districts are legal subsets of the state and, therefore, partake of their immunity.  Mr. Long agrees with Defendants' presentation of the standard governing the determination of whether a political subdivision is an arm of the state for Eleventh Amendment purposes, but contends that the recent statutory amendments have not rendered local school districts synonymous with the state.  The parties' presentations of this issue have not clarified the current status of Indiana's schools and the parties have not conducted discovery on this subject.  Thus, we are unable to reach a decision as to Franklin Community School District's entitlement to

12

immunity to the same extent as is the State under the Eleventh Amendment.

Resolutions of this issue must await another day.

### Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART.  It is granted with respect to Defendants Franklin Community High School, Leighton Turner, Scott Martin, and Michael Hall, and they are accordingly DISMISSED.  The motion is denied as to Defendant Franklin Community School District, awaiting further briefing by the parties.


 Date: 09/29/2009

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Distribution:

Michael Gregory Moore
mmoore8824@aol.com

Thomas E. Wheeler II
FROST BROWN TODD LLC
twheeler@fbtlaw.com


Roger A. Young
YOUNG & YOUNG
yfastford4x4@netzero.com